STATE OF MISSOURI ex rel. CHARLES C. GARDNER, Defendant in Error, v. OSCAR H. WEBB and ALBERT H. LATHAM, Plaintiffs in Error.

Kansas City Court of Appeals, January 19, 1914.

1. PRINCIPAL AND SURETY: Damages: Notary Public. This is an action against the principal and surety on a bond of a notary public to recover $2000, the amount of the penalty of the bond, on account of a breach of a condition of the bond by the notary. The notary made false certificates to affidavits which were the cause of the loss of $4000 to plaintiff in a real estate loan. *Held*, that defendant should have anticipated that such use would be made of his false certificates.

2. PLEADING: Answering to the Merits. When a party answers to the merits of a case and accepts the hazard of a trial, he impliedly asserts that his adversary has stated a good cause of action against him. Having delayed an attack on the petition until after verdict, a party cannot avail himself of the rule of strict construction.

3. PRINCIPAL AND SURETY: Damages: Notary Public. A case may result from either a willful or a negligent breach of duty of a notary public, and a prima-facie case is made when plaintiff pleads and proves that his injury resulted from a false certificate made by the defendant notary and the burden then devolves on the defendant of showing that he acted innocently and with reasonable care and diligence.

Error to Adair Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*John T. Barker* and *Higbee & Mills* for plaintiffs in error.

*C. E. Murrell* and *Campbell & Ellison* for defendant in error.

JOHNSON, J.—This is an action against the principal and surety on a bond of a notary public to recover $2000, the amount of the penalty of the bond, on the ground that plaintiff sustained damages in excess of that sum on account of a breach of a condition of the bond by the notary. The jury returned a verdict for plaintiff and the defendants brought the case here by writ of error. No bill of exceptions was filed, we have nothing but the record proper before us, and the only point raised by defendant is that the petition is fatally defective and will not support the verdict and judgment. From an additional abstract of the record filed by plaintiff, it appears that a stipulation was filed in the circuit court in which the issues to be tried were defined and restricted and the defendants expressly waived all objections to the petition. Objection to the consideration of this stipulation is offered by defendants on a number of grounds which need not be stated, since our analysis of the petition has led us to the conclusion that it states a good cause of action and is sufficient to support the verdict and judgment. The pleaded facts thus may be stated:

Defendant Webber was duly commissioned as a notary public within and for Adair county and with defendant Latham as surety executed the bond in suit which was conditioned as required by law for the faithful performance by Webber of the duties of the office. Plaintiff lived in Adair county, in Kirksville, and was engaged in the business of lending money on real estate security. In June, 1908, D. O. Seaman, who lived in Macon county, applied to plaintiff for a loan of $4000, on the security of certain lands in that county

which he claimed to have recently purchased, partly from John N. Potes and partly from Gottfried Wolf. Plaintiff was willing to lend the money on the proffered security and Seaman delivered abstracts of title to plaintiff which showed that Potes and Wolf had owned the respective tracts for many years and had recently conveyed them by warranty deeds to Seaman. The true fact was that Potes and Wolf were still the owners of the land and the deeds which bore their signatures and acknowledgments were forged by Seaman who had no title or interest in the property. The abstract of each tract showed that many years ago it had been sold for taxes and the purchasers had received and filed tax deeds. Plaintiff had the abstracts examined and at the suggestion of the examiner required Seaman to procure affidavits from Potes and Wolf showing title by adverse possession as against those outstanding tax deeds. Seaman forged affidavits to meet this requirement which were dated June 29, 1908, and bore the forged signatures of Potes and Wolf. They also bore the signature and seal of defendant Webber as notary public. Seaman delivered these affidavits to plaintiff who, relying upon their genuineness, made the loan and paid $4000 to Seaman. There are allegations that "without said affidavits plaintiff would not have approved the title of the said D. O. Seaman in and to said land nor would he have made the loan to the said D. O. Seaman," and that "the relator, relying solely upon said affidavits and believing same to be genuine, did on the 20th day of June, 1908, lend to the said D. O. Seaman $4000, as evidenced by the promissory note herewith filed," etc. Further it is alleged "that the said D. O. Seaman could not have obtained said affidavits, as required by the said C. C. Gardner, for the reasons that had the said Seaman attempted to obtain same from the said Wolf or Potes, they would have known he was concerning himself with the title to the lands belonging

to them, and would have started an inquiry in regard to the conditions of their titles, and said forgeries have been discovered, and the said Gardner would have discovered that the said Seaman owned no title in said lands; that if the said Seaman had failed to obtain the affidavit from any person knowing said land and the title thereof, relator would not have made said loan, or if the said Seaman had attempted to procure affidavit from any person knowing said lands, then Seaman would have been discovered in his forgeries and said loan would not have been made.

"Plaintiff says that said C. C. Gardner at the time of making loan relied upon said notarial acknowledgment so taken by the said defendant Oscar Webber, and accepted same as the genuine affidavit of the said Wolf and Potes. But relying upon the genuineness of said acknowledgment he made said loan, and has thereby lost the sum of four thousand dollars ($4000), with interest thereon according to the terms of said note, and has been damaged in that amount with interest thereon from said date; that no part of said note or interest has ever been paid."

We are referred by counsel for defendants to authorities in which the well-recognized rule is applied that in the construction of a petition nothing will be assumed in favor of the pleader which has not been averred as the law does not presume that a party's pleadings are less strong than the facts of the case will warrant. As is said by the Supreme Court in the recent case of Walsh v. Pulitzer Pub. Co., 157 S. W. 326, 250 Mo. 142, "the pleader is supposed to have stated his case in the manner most favorable to himself. · The law will not assume as favorable to a party anything he has not averred." [See, also, Cook v. Putnam County, 70 Mo. 668; 4 Ency. Pl. & Pr. 746.]

But this rule of construction is for use only in cases where the pleading is attacked by demurrer. After the defendant by answering to the merits has ac-

cepted the petition as stating a good cause of action, and especially after trial and verdict in favor of the plaintiff, the rule of strict construction is superseded by the contrary rule and every reasonable inference and intendment will be brought in aid of the petition. As is said in Banks v. Company, 106 Mo. App. 1. c. 124: "The rule of construction applicable to a pleading is varied by the stage of the case at which the petition, answer or reply may be considered, while the pleading is more rigidly construed before verdict, a relaxed and more favorable rule obtains after verdict, and every reasonable intendment is then brought to aid the pleading assailed."

Of course the objection that the petition utterly fails to state a cause of action may be offered at any stage of the proceeding, but if withheld until after verdict "such objection to be available in the trial must go to the entire sufficiency of the petition to state a cause of action and cannot avail where it states a cause of action which is indefinite and imperfect in some of its averments." [McDermott v. Claas, 104 Mo. 14.] Where a petition is capable of being amended and the imperfectly pleaded cause is found to be sufficient to bar another action for the same cause the petition will be held good after verdict. Courts are strongly inclined to take a defendant at his word when by answering to the merits and accepting the hazard of a trial he impliedly asserts that his adversary has stated a good cause of action against him. Having delayed their attack on the petition until after verdict, defendants cannot avail themselves of the rule of strict construction they invoke and, deprived of the aid of that rule, their belated attack must fail for the reason, as we shall show, that the petition when liberally construed is found to state a cause of action.

The gist of the pleaded cause is that the defendant notary made a false certificate to the affidavits and that his act in so doing was the proximate cause of

plaintiff's injury. We do not agree with the view of defendants that the petition is defective in omitting to allege that Weber knew at that time that Seaman claimed to own the land, had forged the deeds from Potes and Wolf, had applied to plaintiff for a loan and intended to use the affidavits to procure the loan.

The condition of the official bond of the notary was that he would faithfully execute the duties of his office and it goes without saying that a false certificate to an affidavit knowingly made by the notary would constitute a breach of that condition. But the law requires more of such an officer than the mere abstention from criminal or quasi-criminal acts performed under color and by virtue of his office. Great faith and credit customarily is reposed in the certificates of such officers and a corresponding duty is imposed on them to exercise care and caution such as a reasonably careful and prudent man burdened with such responsibility would exercise to guard against being led into making a false certificate. If the notary has no acquaintance with the person who appears as the affiant, it is his business, before certifying officially to the identity of such person to require such proof of his identity as would satisfy a reasonably careful and prudent man in the situation of the officer. Any less care than this would be in defect of a faithful performance of the duties of the office and would subject the notary to liability on his bond for the resultant damages. Consequently a cause of action may result from either a willful or a negligent breach of duty, and it has been held, in effect, in this State (State ex rel. v. Ryland, 163 Mo. 280; State v. Meyer, 2 Mo. App. 415; State ex rel. v. Balmer, 77 Mo. App. 463), that the plaintiff in actions such as the present makes out a prima-facie case when he pleads and proves that his injury resulted from a false certificate made by the defendant notary and that then the burden devolves on the defendant

of showing that he acted innocently and with reasonable care and diligence.

Further it is argued by defendants that the petition shows affirmatively that the false certificates were not the proximate cause of plaintiff's loss for the reason, among others, that the affidavits were literally true and, therefore, did not mislead plaintiff. This argument is specious in the last degree. True the instruments contained no misrepresentations in the recited facts relating to the title and ownership of the land, but they falsely purported to bear the signatures of Potes and Wolf and to have been made by those persons pursuant to plaintiff's express requirement. They were a falsehood from beginning to end, designed and intended by their author to deceive and defraud plaintiff and were given the stamp of verity by the wrongful act of the notary.

Equally fallacious is the argument that the forged deeds must be regarded as the sole cause of plaintiff's loss. It must be conceded that they were a cause for plaintiff would not have parted with his money had the abstracts failed to show title in Seaman but they were a concurring and not the sole cause. It required the co-operation of the two wrongs to produce the injury to plaintiff since it is clearly alleged that plaintiff would not have closed the loan in the absence of a fulfillment of the requirement for affidavits from Potes and Wolf. Clearly the loss was a direct and not a remote or merely speculative result of the notary's breach of duty.

Point is made that in alleging that the affidavits were taken on June 29th, and the loan made on June 20th—nine days before—the petition negatives the charge that plaintiff relied on the affidavits in making the loan. This apparent confusion of dates, we think, is sufficiently explained in the context. The petition reiterates in the most positive language that the affidavits were delivered to plaintiff before he paid the

money and that without them he would not have gone on with the transaction. We assume that the evidence supported these averments. If it did not but, on the contrary, showed that the money was paid nine days before the affidavits were delivered to plaintiff, counsel for defendants have been remiss in not preserving this point in a bill of exceptions.

Another objection to the petition is that it does not allege the value of the land and it is claimed that such value would be the measure of damages. But this defect, if it be one, is one that could have been cured by amendment and, therefore, was waived by answer.

Finally, it is urged that the notary, not having any knowledge of the fraud, or of the purposes for which the affidavits were to be used, cannot be held to have anticipated the injury to plaintiff as a probable or natural consequence of his breach of duty. Affidavits showing title by adverse possession are commonly used for the purpose either of effecting a sale of land or of procuring a loan upon it, and we hold that plaintiff should have anticipated that such use would be made of his false certificates as was made by Seaman.

The judgment is affirmed. All concur.

## ON MOTION FOR REHEARING.

In their motion for a rehearing counsel for defendants argue that in the foregoing opinion we have treated averments of mere legal conclusions as statements of constitutive facts and thus have ignored the well-settled rule that "the allegation of a conclusion of law raises no issue." [Mallinckrodt Chemical Works v. Neunnich, 169 Mo. 1. c. 397; Vogeler v. Punch, 205 Mo. 1. c. 577; Gibson v. Railroad, 225 Mo. 1. c. 482.]

We think this argument proceeds from an erroneous understanding of the nature of the allegations that plaintiff "at the time of making the loan relied

upon said notarial acknowledgment so taken by the said defendant Webber, and accepted same as the genuine affidavit of the said Wolf and Potes. But relying upon the genuineness of said acknowledgment he made said loan, and has thereby lost the sum of four thousand dollars ($4000), with interest thereon. . . ."

That and similar allegations appearing in the petition should not be classed as legal conclusions but as statements of an elemental fact of plaintiff's cause. It was incumbent on plaintiff to plead and prove not only that a false certificate was made but that he relied upon it and did not make the loan and part with his money until he had been subjected to its influence. In saying that he relied upon it, he stated a fact as distinguished from a mere conclusion.