Grace L. BELL, Plaintiff-Appellant,

v.

ESTATE of Dr. A. J. BELL, Deceased,
S. Floyd Middleton, Administrator,
Defendant-Respondent.

No. 23768.

Kansas City Court of Appeals.

Missouri.

June 3, 1963.

R. S. McFarland, Nevada, for appellant.

A. E. Elliott, Nevada, for respondent.

HUNTER, Judge.

This is an action by appellant, Grace L. Bell, against the estate of Dr. A. J. Bell, deceased, for the value of meals and personal services allegedly provided by her to

Dr. Bell from September 1, 1953, to May 16, 1959.

By way of background, appellant is the wife of witness Arthur J. Bell, the son of Dr. A. J. Bell, of Nevada, Mo., who died at the age of eighty-nine on May 16, 1959. Dr. Bell left no other surviving children but did have surviving him at least one grandchild from another child.

During his latter years Dr. Bell suffered from arteriosclerosis, a duodenal ulcer and possibly Parkinson's disease. About September 1, 1953, Mr. Bell and appellant, moved from Sylacauga, Alabama to Nevada, Missouri, to look after Mr. Bell's aging mother (then living) and father. Mr. and Mrs. Bell moved into a house in Nevada which, according to some of the testimony, was owned by Dr. Bell. It was the practice of Dr. Bell after his wife passed away in September, 1953, to eat some of his meals at the home occupied by his son. He ate other meals in restaurants in Nevada. About March 1, 1959, Dr. Bell was hospitalized in Pulaski, Tennessee, for three weeks and Mr. and Mrs. Bell stayed in Pulaski, Tennessee, the following six weeks to help care for him. The other times in question Dr. Bell resided in Nevada, Missouri, apparently to the date of his death.

The cause was tried to a jury which returned its verdict in favor of appellant in the sum of $5,908.00, the full amount of the claim. Thereafter, in ruling on respondent's motion for a new trial, the trial court ordered, "If plaintiff will in 10 days remit $2,416.00 of her claim and the jury's verdict, and consent to entrance of judgment in the amount of $3,492.00, motion for new trial will be overruled; otherwise motion will be sustained and a new trial will be entered herein."

Appellant refused to remit, and after ten days had passed the trial court sustained respondent's motion for a new trial and granted a new trial "because (1) the verdict of the jury is excessive, and (2) because the verdict of the jury includes items that are barred by the statute of limitations."

Appellant's present contentions are that the evidence is such that the trial court was not justified in setting aside the jury's verdict as excessive, and that no part of the claim was barred by the statute of limitations.

■■■ The law concerning the right of a trial court to set aside a verdict on the ground the verdict is excessive and to order a new trial is well settled. In Union Electric Company of Missouri v. McNulty, Mo. Sup., 344 S.W.2d 37, 39, it was summarized, "Granting a new trial on the ground a verdict is excessive or inadequate is a holding that the verdict is against the weight of the evidence on that fact issue. Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W.2d 333(15), 8 A.L.R.2d 710; State ex rel. State Highway Comm. v. Liddle, Mo.App., 193 S.W.2d 625(1); Supreme Court Rule 78.01, V.A.M.R. Such ruling is peculiarly within the sound discretion of the trial court, which may weigh the evidence, whereas appellate courts do not weigh the evidence in reviewing a jury tried action at law (Sofian v. Douglas, 324 Mo. 258, 23 S.W.2d 126, 129); and the trial court's action is not overturned unless the trial court has manifestly abused its discretion, as where its action is not supported by any substantial evidence."

■■■ The question for our determination is whether the trial judge was guilty of an abuse of discretion in granting a new trial on the ground the verdict was against the weight of the evidence in the respect that the verdict was excessive, and this the appellant has the burden of establishing on the record before us. Appellate courts determine the issue as one of law and do not weigh the evidence or pass on the credibility of the witnesses, and must view the evidence in the light most favorable to affirming the trial court's action. Huffman v. Mercer, Mo.Sup., 295 S.W.2d 27; Bierman v. Langston, Mo.Sup., 304 S.W.2d 865;

Greco v. Hendricks, Mo.Sup., 327 S.W.2d 241. If the evidence viewed in such light does afford reasonable and substantial support for the trial court's order or remittitur, then there is no abuse of discretion, and the trial court's action must be sustained. Wicker v. Knox Glass Associates, 362 Mo. 614, 242 S.W.2d 566.

■ In her "List of Services Performed" appellant claims that from September 1, 1953, to October 30, 1953, she prepared and served Dr. Bell three meals for sixty days of a value of $4.00 per day for a total of $240.00, and that from November 1, to December 15, she provided three meals a day for forty-five days, claiming $180.00.

Appellant did not testify on the issues, and her husband's testimony on her behalf was that his father took three meals a day with *him* "until nearly the first of November, I don't know just exactly the date that he stopped taking meals there. * * * I *don't know just exactly how long it was* * * *. It was continuous and then it would vary too, you would never know when he was coming in or when he was going to be there, he would just walk in, stay long enough to eat and leave."

Appellant claimed that in 1954 she provided three meals a day from January 12, to June 7th, a total of 147 days at $4.00 per day for a total of $558.00; from June 21, to September 21, three meals per day for 90 days for a total of $360.00; and from October 1, to December 24, three meals per day for fifty-five days for $220.00. In 1955, from January 25 to April, she provided three meals per day for 77 days for $308.00. The total of these claims for meals is $1,896.00.

Appellant's husband's testimony relied upon to support this portion of her claim was vague. When Dr. Bell ate with them "was continuous and then it would vary too." Also when with them he sometimes ate only one or two meals each day claimed, but the charge was still $4.00 for each such day. Mr. Bell was asked, "Q. * * *

When he was boarding at your house, who paid the grocery bill? A. I paid most of it, my wife paid it, the rest of it. * * * I furnished all of it but about $600.00. * * Q. In the whole eight years she only had $600.00 of her own money? A. That's right."

Appellant makes no claim for anything for the period from April, 1955, to January 20, 1957. Commencing on January 21, 1957, to May 16, 1959, appellant claims she provided meals, nursing care, house cleaning, sewing and attending Dr. Bell's personal needs for a total of $4,012.00. The meals were again valued at $4.00 per day no matter how many were eaten on a particular day. The rate charged by appellant for the other services mentioned was not specifically testified to, although there was testimony as to charges made by others in that vicinity for practical nurse care.

Respondent adduced evidence to the effect that during some portions of the time Dr. Bell was being charged for three meals a day by appellant he was taking some of his meals at a local restaurant where he paid on an average of about 50¢ per meal. Dr. Bell's grandson testified that during a part of the time in question, and at a time his grandfather had appellant and her husband staying at Dr. Bell's house, Dr. Bell paid for the biggest part of the groceries.

We believe it unnecessary to further detail the evidence. It is clear that appellant is claiming several thousand dollars for meals she asserts she provided Dr. Bell over an eight year period. Yet her husband's testimony which she relies upon as her proof is to the effect she had available only $600.00 of her own money during this entire period. His evidence indicates he and not his wife paid the bulk of the expense of these meals on which she bases her claim. While appellant, through her husband's testimony, valued these meals at the rate of $4.00 per day there is other evidence indicating that evaluation is far too high. As to exactly how many days Dr. Bell ate one, two or three meals she provided, or

how many meals she provided him on any particular day the testimony is vague. It is also vague concerning much of the other services and personal care she claims to have provided and the value thereof. On this testimony the jury gave her recovery in the full amount of her claim.

Assuming, without deciding, that none of the claimed items is barred by the statute of limitations it is our view that the evidence considered in its entirety fully supports the trial judge's grant of a new trial for the reason that the jury's verdict was excessive. The record before us does not demonstrate any abuse of discretion by the trial court in granting a new trial.

Having so decided, it is unnecessary and of no usefulness to determine the question of the statute of limitations, stated by the trial court as an additional reason for the grant of a new trial. The parties are now enlightened on this subject by their research as revealed by their briefs, and this question may not arise on a retrial; or if it does, it may be presented under different or additional evidence.

The order granting a new trial is affirmed.

All concur.